**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-26816-BLOOM**

ORLANDO ROSALES SALMERON,

Petitioner,

v.

MIAMI ICE FIELD OFFICE DIRECTOR, in his official capacity,

Respondent.
______________________________________/

**ORDER ON HABEAS PETITION**

**THIS CAUSE** is before the Court upon Petitioner Orlando Rosales Salmeron's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241. ECF No. [1]. Petitioner alleges that he has been unlawfully detained in Immigration and Customs Enforcement ("ICE") custody. After the Court issued an Order to Show Cause, ECF No. [5], Respondent filed a Response, ECF No. [8], and Petitioner filed a Reply, ECF No. [9]. The Court has considered the Petition, the supporting and opposing submissions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Petition is denied.

## I. BACKGROUND

Petitioner is a native of Nicaragua. ECF No. [1] ¶ 18; ECF No. [8-1]. On September 21, 1990, Petitioner adjusted his status to that of a lawful permanent resident. ECF No. [8-2]. On October 15, 1993, Petitioner was adjudicated guilty in Dade County, Florida, of Trafficking in Cocaine and Conspiracy to Traffic in Cocaine and was sentenced to be imprisoned for a term of five years and to pay a fine of $250,000 plus a $12,500 surcharge. ECF No. [8-3].

On March 14, 1994, the legacy Immigration and Naturalization Service ("INS") served

Petitioner with a Form I-221, Order to Show Cause and Notice of Hearing charging him as deportable from the United States under Section 241(a)(2)(B)(i) of the Immigration and Nationality Act ("INA") and Section 241(a)(2)(A)(iii) of the INA. ECF No. [8-2]. On September 28, 1994, an Immigration Judge ordered Petitioner removed from the United States. ECF No. [8-4]. On November 18, 1994, Petitioner was removed from the United States. ECF No. [8-5].

Petitioner later illegally reentered the United States at an unknown location. *Id*. On December 7, 2019, Petitioner was encountered by Florida Highway Patrol and Border Patrol agents and taken into custody. ECF No. [8-1]. That same day, the Department of Homeland Security ("DHS") served Petitioner with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, reinstating Petitioner's removal order. ECF No. [8-5].

On December 8, 2019, Petitioner was transferred into the custody of ICE Enforcement and Removal Operations ("ERO"). ECF No. [8-6]. On January 15, 2020, Petitioner was transferred into the custody of another federal agency. *Id*. On April 24, 2020, Petitioner was adjudicated guilty in the United States District Court for the Southern District of Florida of Reentry of Deported Alien – Felony and sentenced to be imprisoned for a term of 21 months followed by supervised release for a term of one year. ECF No. [8-7].

On July 1, 2021, Petitioner was taken into ICE ERO custody. ECF No. [8-6]. On August 16, 2021, DHS referred Petitioner's case to an Immigration Judge for withholding only proceedings. ECF No. [8-8]. On April 28, 2022, an Immigration Judge ordered Petitioner removed to Nicaragua but granted Petitioner's request for Deferral of Removal under the Convention Against Torture. ECF No. [8-9]. That day, Petitioner was released from ICE ERO custody under an Order of Supervision ("OSUP"). ECF No. [8-6].

On August 21, 2026, Petitioner involuntarily missed an ICE check-in due to his

hospitalization for influenza treatment. ECF No. [1] ¶ 20. Petitioner advised his immigration attorney, who immediately explained the situation and submitted a request to re-schedule his check-in date. *Id*.

On September 28, 2026, ICE ERO took Petitioner into custody at his home. ECF No. [8-1]; ECF No. [1] ¶ 21. On October 2, 2026, ICE ERO served Petitioner with a Notice of Revocation of Release notifying Petitioner that his OSUP was being revoked. ECF No. [8-10]. That same day, Petitioner was afforded an informal interview where he was given the opportunity to respond to the reasons for revocation of his OSUP. ECF No. [8-11].

On October 5, 2026, ICE ERO served Petitioner with a superseding Notice of Revocation of Release due to an error in the one previously served. ECF No. [8-12]. That same day, Petitioner was again afforded an informal interview where he was given the opportunity to respond to the reasons for revocation of his OSUP, but Petitioner refused to participate in the interview. ECF No. [8-11].

ICE ERO asserts that it is reviewing Petitioner's case and intends to effectuate his removal to Mexico or an alternate third country. ECF No. [8-12]. Petitioner remains detained at the Krome North Service Processing Center ("Krome") pending his removal. ECF No. [8-6].

Petitioner filed the Petition on September 29, 2026, asserting four claims for relief: Violation of the Due Process Clause of the Fifth Amendment: Substantive Due Process (Count I), Violation of the Due Process Clause of the Fifth Amendment: Procedural Due Process (Count II), Violation of the Accardi Doctrine and 8 C.F.R. §§241.4, 241.13: No Regulatory Authority to Detain (Count III), and Violation of Class-Action Judgment: No Authority to Detain at Present Location (Count IV). ECF No. [1]. He requests immediate release from custody. *Id*.

Respondent argues that the Court lacks jurisdiction to review the execution of Petitioner's

removal proceedings pursuant to 8 U.S.C. § 1252(g). ECF No. [8] at 6. Similarly, Respondent contends that 8 U.S.C. § 1252(a)(2)(B) bars review of Respondent's decision to revoke Petitioner's OSUP. *Id.* at 7–8. Respondent argues that Petitioner's continued detention is lawful pursuant to 8 U.S.C. § 1231, his challenge to his detention is premature and he has not shown that removal is not reasonably foreseeable, his detention serves a legitimate governmental purpose, his allegations regarding his OSUP do not entitle him to immediate release, his *Accardi* claim fails because ICE followed applicable procedures, and his due process claims fail. *See generally id.*

Petitioner replies that ICE provided insufficient process, specifically in Petitioner's Notices of Revocation of Release and informal interviews. ECF No. [9] at 1–5. Further, he argues that his detention has become unconstitutionally prolonged if his prior detention periods are aggregated. *Id.* at 5–6. Fundamentally, he argues that his detention is unlawful under federal regulations and due process. *Id.* at 7–9.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. See 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Jurisdiction

Respondent argues that both 8 U.S.C.§ 1252(g) and 8 U.S.C. § 1252(a)(2)(B) strip the Court of jurisdiction here. ECF No. [8] at 6–8. Petitioner replies that he "does not challenge his removal order or its execution; he challenges the lawfulness of his detention." ECF No. [9] at 5.

**i. 8 U.S.C.§ 1252(g)**

Section § 1252(g) states, "Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court has explained that this provision "applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (internal quotation marks omitted) ("*AADC*"). It does not "refer[] to all claims arising from deportation proceedings," *id.*, nor does it "sweep in any claim that can technically be said to 'arise from' the three listed sections[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Instead, this "narrow" provision is "specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *AADC*, 525 U.S. at 487.

The Court finds that this provision applies to bar review only of Count I. As noted, § 1252(g) precludes review of three decisions—the decision to *commence* proceedings, *adjudicate* cases, or *execute* removal orders. And the Eleventh Circuit instructs that, "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship & Immigration Services*, 964 F.3d 1250, 1257–58 (11th Cir. 2020). Here, Plaintiff does not directly challenge the first of those two actions.

First, the Notice to Appear is the "decision or action" to "commence proceedings" that § 1252(g) refers to, *Umesi v. U.S. Att'y Gen.*, 813 F. App'x 469, 470 (11th Cir. 2020), and Petitioner does not challenge the decision to issue a Notice to Appear. Second, the "adjudication" of cases refers to "the discretionary, quasi-prosecutorial decisions by asylum officers" or other immigration officials; that is, it is the *decision* to either abandon a removal effort or adjudicate it "that Congress

wished to preserve from judicial review." *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001). Petitioner does not ask the Court to order immigration officials to make a different decision on Petitioner's removal order.

However, Count I expressly challenges ICE's discretionary decision to revoke Petitioner's OSUP and take him into custody. In Count I, Petitioner argues that he was "arbitrarily detained after having committed no violation of his supervision conditions and despite having been fully compliant with reporting requirements." ECF No. [1] § 39. Insofar as ICE failed to provide allegations of misconduct or a reasoned explanation for the sudden revocation of his OSUP, Petitioner's detention bears no reasonable relation to a valid governmental purpose. *Id*. Indeed, Petitioner expressly admits that he challenges "the lawfulness of ICE's discretionary decision revoking his release[.]" ECF No. [9].

This is not an argument that ICE failed to comply with its own regulations in revoking his release or that ICE's procedures for revoking his release were insufficient—both of which would challenge the *manner* of revocation, rather than the *decision* to revoke. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (holding that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."). Petitioner effectively argues that immigration officials did not have a good enough reason to revoke his release, which is a direct challenge to the discretionary decision to execute a removal order. To the extent the claim is construed as challenging the procedures attendant to the revocation, it collapses into Petitioner's procedural due process claim (Count II) and *Accardi* doctrine claim (Count III).

However, Petitioner's remaining claims do not ask the Court to stay, invalidate, or otherwise interfere with execution of a removal order. Fundamentally, § 1252(g) "was directed

against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's three remaining habeas claims do not challenge any discretionary decision at all. Rather, they challenge whether ICE complied with its own regulations in revoking his OSUP, and whether the procedures with which he was provided comport with due process.

**ii. 8 U.S.C. § 1252(a)(2)(B)**

Regarding 8 U.S.C. § 1252(a)(2)(B), this provision states, in relevant part, that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" "The Eleventh Circuit has consistently held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its own regulations and procedures." *See Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (citation omitted). Indeed, the Eleventh Circuit has expressly held that where immigration officials "fail[] to follow the correct procedure . . . that failure was not within [the immigration official's] discretion." *Kurapati v. U.S. Bureau of Citizenship and Immig. Services*, 775 F.3d 1255, 1262 (11th Cir. 2014); *see also Fla. Dep't of Bus. Regulation v. U.S. Dep't of Interior*, 768 F.2d 1248, 1257 n. 11 (11th Cir. 1985), *abrogated on other grounds by Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012) ("Even when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations."); *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir.2000) ("Agencies must respect their own procedural rules and regulations.").

Here, Petitioner's remaining three claims challenge ICE's compliance with its own OSUP revocation procedures and whether the procedures available to him complied with the

requirements of due process. Neither of these matters touches on discretionary decision-making. As such, judicial review is not precluded.

### B. Violation of the Due Process Clause of the Fifth Amendment: Procedural Due Process (Count II) and Violation of the *Accardi* Doctrine and 8 C.F.R. §§ 241.4, 241.13: No Regulatory Authority to Detain (Count III)

The Court addresses Counts II and III together because Petitioner contends that ICE's failure to abide by the "protections" of 8 C.F.R. §§ 241.4 and 241.13 violated his due process rights. ECF No. [1] ¶ 47. In other words, the procedure to which Petitioner claims he was entitled was that encompassed by 8 C.F.R. §§ 241.4 and 241.13, and the procedural due process violation was ICE's alleged failure to comply with the requirements of those regulations. *Id.* ¶ 46. Thus, if the Court finds that ICE followed its own procedures, Petitioner's due process claim necessarily fails, as he would have received the procedures to which he claims entitlement.

In Count II, Petitioner argues that he did not receive notice or an opportunity to be heard before he was deprived of his liberty. ECF No. [1] ¶¶ 42, 43. Specifically, "ICE revoked his OSUP and detained him without prior notice, without alleging any specific violation, without providing a written explanation of any specificity, and without affording Petitioner an opportunity to contest the revocation." *Id.* ¶ 43. In addition, Petitioner argues that the procedures "categorically foreclose individualized review." *Id.* ¶ 45. Petitioner contends that ICE's interest in enforcement is adequately protected by the OSUP formerly in effect, and Respondent has not specified the factual grounds for revocation set forth in 8 C.F.R. § 241.13 or 8 C.F.R. § 241.4, so it had no legal authority to revoke his supervision. *Id.* ¶ 46.

In Count III, relying on the *Accardi* doctrine,[1] Petitioner argues that Respondent violated

---

[1] The basic premise of the *Accardi* doctrine, drawn from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), is that "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir.

the notice, interview, and opportunity to respond requirements of 8 C.F.R. §241.4(l). *Id.* ¶ 49. Specifically, Respondent "provided Petitioner no written explanation, no finding of violation, and no procedural steps whatsoever before cancelling his supervision and taking him into custody." *Id.* ¶ 50. Thus, ICE lacked the authority to detain Petitioner. *Id.* ¶¶ 50, 52.

Respondent contends the record clearly reflects that Petitioner received two Notices of Revocation of Release and two informal interviews, both within a couple weeks of his detention. ECF No. [8] at 14. Moreover, ICE did not need to find that Petitioner violated the terms of supervision or that conditions had materially changed to revoke his release; ICE need only determine—as it did here—that revocation is appropriate to enforce a final order of removal. *Id.* at 15. This means that ICE complied with its own applicable procedures, so there is no basis for Petitioner's assertion that ICE "ignored these rules entirely." *Id.* at 15–16.

Pursuant to 8 C.F.R. § 241.4(l), an OSUP may be revoked and a noncitizen taken back into detention if the individual violates conditions of release *or* if one of the following four conditions are met, according to the immigration official's "discretion" and "opinion":

(i) The purposes of release have been served;
(ii) The alien violates any condition of release;
(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(1)–(2). Two requirements apply when ICE seeks to revoke an OSUP: (1) "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole[,]" and (2) "The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for

1984). Furthermore, it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

Similarly, 8 C.F.R. § 241.13(i) provides that an OSUP may be revoked and a noncitizen taken back into custody if the individual violates conditions of release *or* "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). The regulation provides certain procedures that must be followed in the event of a revocation: (1) "Upon revocation, the alien will be notified of the reasons for revocation of his or her release[,]" and (2) "The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). In essence, under either provision, ICE is required to provide a notice stating the reasons for the revocation and an informal interview at which the noncitizen can contest the reasons for his detention.

There is no dispute that ICE did both here. ICE provided an initial Notice of Revocation of Release on October 2, 2026—just four days after Petitioner's detention—which described the reasons for revocation as including that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." ECF No. [8-10]. ICE issued a revised Notice of Revocation of Release on October 5, 2026, which maintained that reason but additionally clarified that "ICE is seeking a travel document to effect your expeditious removal to Mexico and others." ECF No. [8-12]. Following both Notices, Petitioner was provided an informal interview to contest the reasons for revocation. ECF No. [8-11] ¶¶ 21, 22. During the second interview, Petitioner refused to participate. *Id.* ¶ 22.

Petitioner offers nothing beyond conclusory allegations to support his position. With respect to the Notices of Revocation, he contends that ICE "fail[ed] to provide adequate notice,"

failed to provide "specific alleged violations" or an "indication that any viable removal country had been identified," and failed to "provid[e] a written explanation of any specificity[.]" *Id.* ¶¶ 4, 28, 43. With respect to the interview, Petitioner alleges that ICE failed to provide "a meaningful opportunity to respond before or at the time of detention" and a "prompt and constitutionally sufficient interview . . . either when he was being re-detained or soon thereafter," *Id.* ¶¶ 4, 25. Fundamentally, Petitioner contends that, "[u]pon information, knowledge, and belief, Respondent has not followed the regulations governing the manner in which orders of supervision must be revoked, including compliance with applicable notice and interview requirements." *Id.* ¶ 23.

Those conclusory allegations cannot suffice in a habeas case, where the burden is on Petitioner to establish his right to habeas relief. *Modeste v. Sec'y, Fla. Dep't of Corr.*, No. 22-10711, 2024 WL 2147835, at *4 (11th Cir. May 14, 2024). Petitioner must "prove his right to relief by a preponderance of the evidence." *Alvord v. Wainwrigh*t, 731 F.2d 1486, 1488 (11th Cir. 1984). A petitioner cannot obtain habeas relief "when his claims are merely conclusory allegations unsupported by specifics." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). And that is all Petitioner offers.

In his Reply, Petitioner attempts to shift the burden to Respondent, alleging that Respondent "has provided no evidence of any country's actual willingness to accept him on their territory," and the Declaration on which Respondent relies is faulty because the declarant "does not claim that he, personally, conducted an informal interview" or otherwise had personal knowledge. ECF No. [9] at 2. It is true that, in certain habeas cases, the burden can be shifted to the Government once a petitioner has come forward with sufficient reasons tending to justify release. *See Zadvydas*, 533 U.S. at 701 (explaining that if a petitioner "provide[s] evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future[,]" the burden shifts to the Government to rebut that showing). But this is not one of those cases. Petitioner has not offered even a competing account of what happened during the purported informal interviews that would undermine Respondent's characterization. Moreover, Petitioner calls the Government's stated reasons for revocation "boilerplate," ECF No. [9] at 3, but they are not—they specifically explain that "ICE has the ability and means to effectuate [his] removal" and identify a country to which removal is planned, stating that ICE is seeking a travel document for his removal to Mexico. ECF No. [8-12].

Petitioner also cites *Grigorian v. Bondi*, 824 F. Supp. 3d 1243 (S.D. Fla. 2025), in support of his arguments that failure to follow regulations may justify release. ECF No. [1] ¶¶ 33–35. But in *Grigorian*, the petitioner *never* had an informal interview following being taken into ICE custody, amounting to over 75 days without the process required. *Grigorian*, 824 F. Supp. 3d at 1254. There was no interview of the sort contemplated by the regulations at all. Here, Petitioner received two interviews within two weeks following his detention. *Grigorian* is therefore an inapt comparison.

At bottom, the Court finds that Respondent followed its own regulations and provided Petitioner with all the process to which he claims an entitlement. Thus, the Court finds that Petitioner has not carried his burden on either Count II or Count III.[2]

[2] The only daylight between the process Petitioner claims he was due in Count II and Count III is Petitioner's brief reference in Count II to "*prior* notice." ECF No. [1] ¶ 43 (emphasis added). However, the argument is so superficially addressed that the Court finds it waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *see also N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." (citation omitted)).

**C. Violation Class Action Judgment: No Authority to Detain at Present Location (Count IV)**

In Count IV, Petitioner argues that his detention at a temporary confinement facility beyond 12 hours violates a class action judgment. ECF No. [1] ¶ 53. This Count is moot since Petitioner is no longer detained at that facility and is now detained at Krome. ECF No. [8-6]; *see also Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004) (explaining that a "case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." (citation omitted)). Thus, the claim cannot serve as a basis for habeas relief.

**D. Additional Basis for Relief**

In his Reply, Petitioner attempts to assert what amounts to a *Zadvydas* claim. ECF No. [9] at 5–6. Putting aside that it is inappropriate to raise a substantively new basis for relief in a Reply, *Friedman v. Schiano*, 777 F. App'x 324, 332 n.13 (11th Cir. 2019), Petitioner is wrong on the merits.

The Eleventh Circuit has held that the six-month period "must have expired at the time [the petitioner's] petition was filed in order to state a claim under *Zadvydas*." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Petitioner was detained on September 28, 2026 and filed his habeas case on September 29, 2026. One day is far from the presumptively reasonable six-month period contemplated by *Zadvydas*.

And notwithstanding Petitioner's argument to the contrary, ECF No. [9] at 6, the Court cannot aggregate multiple separate detentions for purposes of assessing his *Zadvydas* claim. Some Courts do aggregate all periods of detention following an order of removal, even if such detentions are not consecutive. *See Jaranow v. Bondi*, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention

need not be consecutive to reach the limit established in *Zadvydas*"); *Patel v. Bondi*, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"). Other courts hold to the contrary, concluding that each detention resets the removal period under *Zadvydas*. *See Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals"); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE.").

This Court agrees with the reasoning in the latter set of cases. If a petitioner is released because the presumptively reasonable period of detention has run, Petitioner's logic would mean that Petitioner could *never* be re-detained for purposes of removal—even for a day—as that would run afoul of *Zadvydas*. Rather, it must be the case that there is more "flexibility" involved, as that "reflects the kind of balance *Zadvydas* hoped to achieve: preserving the government's authority to effectuate removals while safeguarding the individual's liberty interests against indefinite detention." *Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *3 (S.D. Fla. Feb. 13, 2026). Of course, if there was "evidence of bad faith or a deliberate strategy of looping confinement" on the part of the Government, the Court's analysis may well be different. *Jagne v. Warden, Alligator Alcatraz*, No. 2:26-CV-734-KCD-NPM, 2026 WL 1378968, at *1 (M.D. Fla. May 18, 2026). But no such allegations exist here, so the Court cannot aggregate Petitioner's detentions for purposes of a *Zadvydas* claim.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [1]**, is **DENIED**.
2. The Clerk of Court shall **CLOSE** this case.
3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 24, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Noticing INS Attorney
Email: usafls-immigration@usdoj.gov

Noting 2241/Bivens US Attorney
Email: usafls-2255@usdoj.gov